**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

**NELLINA L. LOFTIN-TAYLOR,**          *
                                                      *
     **Plaintiff,**                                   *
                                                      *
**vs.**                                               *          **CIVIL ACTION 11-00281-B**
                                                      *
**MICHAEL J. ASTRUE, Commissioner**   *
**of Social Security,**                              *
                                                      *
     **Defendant.**                                  *

**ORDER**

Plaintiff Nellina L. Loftin-Taylor ("Plaintiff") brings this action seeking judicial review of a final decision of the Commissioner of Social Security denying her claim for a period of disability, disability insurance benefits, and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401 et seq., and 1381 et seq. On July 18, 2012, the parties consented to have the undersigned conduct any and all proceedings in this case. (Doc. 16). Thus, the action was referred to the undersigned to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c). (Doc. 17). Upon careful consideration of the administrative record and the briefs of the parties, it is hereby **ORDERED** that the decision of the Commissioner be **AFFIRMED**.

I.   **Procedural History**

Plaintiff protectively filed applications for a period of disability, disability insurance benefits, and supplemental security income on August 27, 2009.  Plaintiff alleges that she has been disabled since May 22, 2008, due to post-traumatic stress disorder (PTSD), spinal injury, back pain, depression, migraines, dizziness, swelling, and problems standing and sitting for a long time. (Tr. 134-5, 141-2, 181-5, 207). Plaintiff's earnings record shows that she has sufficient quarters of coverage to remain insured through December 31, 2012 (her "date last insured"), and that she is insured through that date. (Tr. 134, 251). Her applications were denied at the initial stage (Tr. 137-40), and she filed a timely Request for Hearing before an Administrative Law Judge ("ALJ"). (Tr. 146-8). On April 19, 2010, Administrative Law Judge Katie H. Pierce held an administrative hearing, which was attended by Plaintiff, her attorney, and vocational expert Barry Murphy. (Tr. 119-33).  On April 22, 2010, the ALJ issued an unfavorable decision finding that Plaintiff is not disabled.  (Id. at 22-41).  Plaintiff's request for review was denied by the Appeals Council ("AC") on April 28, 2011.  (Id. at 1-6, 16-18).

The parties agree that this case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II.  Issues on Appeal

    A.   Whether the ALJ erred by finding that Plaintiff's depression is not a severe impairment?

    B.   Whether the ALJ erred by improperly relying on the opinions of a non-examining state Agency mental health consultant rather than the opinion of Plaintiff's treating physicians?

## III. Factual Background

Plaintiff was born on February 12, 1967, and was 43 years old at the time of the administrative hearing.  (Tr. 123, 134, 181-3).  She earned a Bachelor of Arts degree in psychology, a Master of Arts degree in counseling, and completed 9 hours in a PhD program. She has worked in the past as a special education teacher, track coach, case manager, disability specialist, and retail manager. (Id. at 123-7).  Plaintiff reported that she stopped working at her last job as a special education teacher and track coach because her contract was not renewed.  According to Plaintiff, it was her intention to return to work if her contract was renewed. (Id. at 124).

Plaintiff testified that she has pain and swelling in her lower back and that she receives beneficial treatment from a chiropractor. (Id. at 128).  Plaintiff also testified that she receives treatment at the VA Clinic for her headaches, but that

the medication does not help. She further testified that
sometimes she will go 4 or 5 days without sleeping and then will
go to the emergency room so that they can put her to sleep. (Id.
at 127-9). Plaintiff testified that she lives with her 2 teenage
sons and that she spends most of her time lying down because it
is painful for her to walk or sit up. (Id. at 128-9).

IV.   **Analysis**

   A.   **Standard Of Review**

   In reviewing claims brought under the Act, this Court's
role is a limited one.   The Court's review is limited to
determining 1) whether the decision of the Secretary is
supported by substantial evidence and 2) whether the correct
legal standards were applied.   Martin v. Sullivan, 894 F.2d
1520, 1529 (11th Cir. 1990).[1]   A court  may not decide the facts
anew, reweigh the evidence, or substitute its judgment for that
of the Commissioner.   Sewell v. Bowen, 792 F.2d 1065, 1067 (11th
Cir. 1986).   The Commissioner's findings of fact must be
affirmed if they are based upon substantial evidence.   Brown v.
Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991); Bloodsworth v.
Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (holding
substantial evidence is defined as "more than a scintilla but

---

[1]This Court's review of the Commissioner's application of
legal principles is plenary.   Walker v. Bowen, 826 F.2d 996, 999
(11th Cir. 1987).

less than a preponderance" and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion[]").   In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence favorable, as well as unfavorable, to the Commissioner's decision.   Chester v. Bowen, 792 F. 2d 129, 131 (11th Cir. 1986); Short v. Apfel, 1999 U.S. Dist. LEXIS 10163 (S.D. Ala. 1999).

### B.   Discussion

An individual who applies for Social Security disability benefits must prove his disability.  20 C.F.R. § 404.1512, 416.912.   Disability is defined as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 404.1505(a), 416.905(a).  The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven her disability. 20 C.F.R. § 404.1520, 416.920.[2]

---

[2]The claimant must first prove that he or she has not engaged in substantial gainful activity.   The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments. If, at the third step, the claimant proves that the impairment or combination of (Continued)

In the case <u>sub judice</u>, the ALJ determined that Plaintiff met the non-disability requirements for disability insurance benefits through December 31, 2012.  (Tr. 25). The ALJ found that Plaintiff has not engaged in substantial gainful activity since her alleged onset date, that she has the severe impairments of lumbago, cervicalgia, and personality disorder[3], and that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any of the listings

---

impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience. If the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove an inability to perform their past relevant work. <u>Jones v. Bowen</u>, 810 F.2d 1001, 1005 (11th Cir. 1986).  In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; (4) the claimant=s age, education and work history. <u>Id.</u> at 1005.  Once a claimant meets this burden, it becomes the Commissioner=s burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant=s residual functional capacity, age, education, and work history. <u>Sryock v. Heckler</u>, 764 F.2d 834 (11th Cir. 1985). If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled. <u>Jones v. Apfel</u>, 190 F.3d 1224, 1228 (11th Cir. 1999). <u>See also</u> <u>Hale v. Bowen</u>, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing <u>Francis v. Heckler</u>, 749 F.2d 1562, 1564 (11th Cir. 1985)).

[3]  The ALJ determined that Plaintiff's diagnosed benign hypertension was a non-severe impairment. (<u>Id.</u> at 27-8).

contained in 20 C.F.R. Pt. 404, Subpt. P, App. 1, Regulations No. 4. (Id. at 27-8).

Relying on the testimony of the vocational expert and other evidence of record, the ALJ concluded that Plaintiff retains the residual functional capacity (hereinafter "RFC") to perform light work, except that she is limited to work which will only require occasional stooping, kneeling, crouching, crawling, and balancing. The ALJ also found that Plaintiff can frequently climb ramps/stairs, that she can never climb ropes/ladders/scaffolds, that she can occasionally interact with coworkers, supervisors, and the public, that she cannot perform any overheard work, and that she can perform simple, routine, and repetitive tasks. (Id. at 29).

The ALJ next determined that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms but that her statements concerning the intensity, persistence and limiting effects of the alleged symptoms were not credible to the extent they are inconsistent with the RFC assessment. (Id. at 30). The ALJ concluded that Plaintiff's RFC precludes her from performing any of her past relevant work and that, considering Plaintiff's RFC and vocational factors, such as age, education and work experience, she is able to perform other jobs existing in significant numbers in the national economy, such as mail clerk, non-postal,

light bench assembly, and light packer. (Id. at 36). Thus, the ALJ concluded that Plaintiff is not disabled. (Id. at 36-7).

The relevant evidence of record reflects that while on active duty in the military, Plaintiff fell down several steps in 2001. Plaintiff was discharged shortly thereafter and ended her military career with approximately four months of service. (Id. at 237, 302, 330, 339, 432, 475, 506).

Plaintiff was treated periodically in the neurology department at the University of South Alabama from March 17, 2003 through September 24, 2008. (Id. at 327-40). During her initial visit to USA on March 17, 2003, Plaintiff reported to Dr. M. Asim Mahmood that she suffered with headaches and neck and back pain, which had persisted 2 years. On exam, Plaintiff appeared in no obvious distress, and she had mild to moderate range of motion restriction secondary to pain with mild paraspinal muscle tenderness. Plaintiff's active straight leg raise was limited 20-30 degrees bilaterally secondary to pain, although when distracted, passive straight leg raise was negative till 90 degrees bilaterally. Dr. Mahmood diagnosed low back pain, neck pain, chronic daily headache, and migraine. He recommended an MRI of Plaintiff's lumbosacral spine and plain films of her upper spine to rule out any old potential fracture that may have not appeared on earlier films. He also recommended physical therapy for her neck and back, a combination of muscle

relaxants and NSAIDs for pain, and Gabapentin for radicular pain. (Id. at 339-40). The records reflect that subsequent neurologic exams were unchanged. (Id. at 333-7).

The USA treatment notes dated March 12, 2007 reflect that Plaintiff continued to report back and neck pain and worsening headaches. On exam, Plaintiff had normal alignment and significant lumbar tenderness in her back. She had full strength in all 4 extremities, her gait was normal, and a Rhomberg test was negative. Her diagnosis was chronic tension-type headache, chronic back pain, chronic neck pain and depressive mood. The treating physician noted that Plaintiff was depressed and might even be suffering from PTSD; however, when he offered to refer her to a psychiatrist or to personally prescribe her an anti-depressant, Plaintiff denied depression and became offended. Plaintiff was referred for pain management. (Id. at 330-2).

Dr. John E. Semon, at the Alabama Orthopedic Clinic, treated Plaintiff for back pain August 19, 2004 through October 5, 2005. (Id. at 298-303). Plaintiff reported that her pain is aggravated by walking or any activity and that pain medications and rest give her relief. She also reported that she had not had any epidural blocks and that no surgery had been recommended. Dr. Semon observed that Plaintiff's gait was slow, careful, and normal. On exam, Plaintiff's neck was tender generally over the cervical spine and cervical musculature, bilaterally. There was

mild generalized tenderness over the dorsal spine and tenderness generally over the lumbar spine.  Range of neck motion was limited to 50% of normal by pain, and range of motion for the lumbar spine was limited to 25% of normal by subjective pain. Dr. Semon noted that x-rays, AP and lateral, dorsal and lumbar spine films were within normal limits.  A MRI of the lumbar spine showed a small bulge at L5/S1, and an MRI of the entire spine showed small bulges at C4-5 and L5/S1.  Also, a hemangioma was seen in the dorsal spine area. Dr. Semon diagnosed chronic cervical strain, chronic dorsal back strain, chronic low back strain, and questionable depression.  Dr. Semon prescribed Lexapro for depression and encouraged Plaintiff to use a RMS stimulator on a permanent basis at home. (Id. at 299-302).

The record includes treatment notes from the VA Clinic from July 26, 2005 to April 2, 2010. (Id. at 94-118, 425-505, 549-64, 582-91).  Plaintiff received treatment for depression sporadically in 2008 and 2009.  The notes reflect that Plaintiff was evaluated by the VA on October 5, 2007 in connection with her request for an increase in veteran's compensation. Examination of Plaintiff's cervical spine revealed no heat, swelling, or redness, and all motion of the neck caused pain. Examination of Plaintiff's lumbar and thoracic spine revealed pain resulting from any motion of the neck or lower back. Plaintiff's straight leg raise test was negative for radicular

pain, and grip strength and gait were normal. Plaintiff was assessed with degenerative disc disease of the lumbar and cervical spine, without objective findings of radiculopathy. Degenerative changes were noted at L2-L3 and L4-L5, as well as a small disc protrusion at C4-C5, on MRI. (Id. at 432-3).

Plaintiff was seen for depression by psychologist Susan Kathleen Rhodes, at the VA, on August 29, 2008. Plaintiff reported that she previously taught 6th grade special education but was not "called back." She indicated that she did not seek unemployment because she believed she would be called to return to work. Plaintiff further reported sleeplessness since she started graduate school, nightmares, weight gain, isolation from her family and friends, and behavior problems with her sons. She also reported that she walks 2 miles most mornings and that prior to her back injury, she jogged and played sports. Plaintiff's mood was depressed, her affect was congruent, her concentration and memory were intact, her judgment and insight were fair, and she denied any current suicidal or homicidal ideation. Plaintiff was diagnosed with major depressive, single episode, and a GAF of 50.  (Id. at 479-85).

During a September 18, 2008 visit with the psychologist, Plaintiff reported that she was trying to find work but was on the "no hire" list with the State, and that the issues with one of her sons were ongoing. She also reported that she was dating

an older man, who is among the group of older men that she walks with each morning. Additionally, Plaintiff reported being involved in her church choir. Plaintiff was assigned a GAF of 50, and was offered ongoing individual therapy and group therapy. (Id. at 477-8).

Plaintiff sought treatment at the VA on November 5, 2008, and reported that she fell getting out of the tub. She also reported that she walked regularly but had not been walking at all for the past 4 weeks. Attending physician Dr. Seith recommended the Plaintiff seek employment as the "best therapy" for inactivity. (Id. at 464-5). Plaintiff's last record of treatment at the VA is dated April 2, 2010. Plaintiff reported that she was sleeping better with Ambien and was getting good pain relief from Toradol. (Id. at 94-6).

The record includes treatment notes from the Emergency Room at the University of South Alabama where Plaintiff received medical care from February 21, 2009 until April 12, 2010.[4] (Id. at 44-87). On February 21, 2009, Plaintiff reported being involved in a motor vehicle accident. Several radiological images were taken of Plaintiff's spine. CT scans of Plaintiff's thoracic and lumbar spine revealed the vertebral body heights,

---

[4] Identical treatment notes are contained in the record on pages 387-414.

alignment of the vertebral bodies, and the intervertebral disc spaces were well maintained. A CT scan of Plaintiff's cervical spine showed a small osseous density posterior to the C4-C5 intervertebral disc space and a small osseous fragment anterior to the C6-C7 intervertebral disc space; both appeared well corticated. Narrowing of the intervertebral disc spaces was observed at C4-C5, C5-C6, and C6-C7. No radiographic evidence of a fracture or subluxation within the thoracic, lumbar, and cervical spine was seen. Plaintiff's complaints of headache were relieved with Tramadol. She was directed to follow up with her primary care physician. (Id. at 55-73).

On April 12, 2010, Plaintiff reported a migraine headache lasting 2 days, left arm pain lasting 2 days, and insomnia lasting 4 days. She also reported that she had fallen multiple times at home. On exam, she was alert and oriented times 4. Plaintiff was provided Midrin and Tramadol and reported that her headache improved. CT scans of Plaintiff's chest and brain found no acute chest disease and no acute intracranial findings, respectively. (Id. at 44-52).

Following an auto accident, Plaintiff sought physical therapy at the Alabama Injury and Pain Clinic, from February 21,

2009 through May 1, 2009.[5] Plaintiff was treated 3 days per week with cryotherapy, electrical muscle stimulation (EMS), ultrasound, manual traction, and trigger point therapy and was educated on at-home stretches. The notes reflect that Plaintiff had a positive straight leg raise test on March 5, 2009, that Plaintiff made progress and steadily advanced to recovery, and that Plaintiff ultimately reached a treatment plateau, with some residual discomfort, on May 1, 2009. At that time, therapy was discontinued. (Id. at 341-86).

Plaintiff was treated by Dr. Eddie Pace at Mobile Adult Care during March 2009 and September 2009 following the above-referenced automobile accident. (Id. at 415-22, 512-23, 580-1). On exam, Plaintiff had full range of motion in her neck with pain present. Right and left sided CVA tenderness to palpation was also present. Dr. Pace assessed lumbago, cervicalgia, and benign essential hypertension. (Id. at 421-2). In a follow-up visit on September 21, 2009, Plaintiff had full range of motion with no muscle tenderness or CVA tenderness on palpation. She had a positive straight leg raise test bilaterally. (Id. at 416-8).

---

[5] Identical treatment notes are contained in the record on pages 565-79.

Plaintiff sought treatment at Springhill Medical Center in September 2009 and March 2010. On September 22, 2009, Plaintiff was diagnosed with a urinary tract infection and provided an antibiotic. (Id. at 619-20). A few days later, on September 29, 2009, Plaintiff reported falling backwards in the bathtub, and was diagnosed with musculoskeletal strain and occult fracture. (Id. at 604-18). During a March 12, 2010 visit, Plaintiff reported a ground level fall 4 days prior and resulting back pain. She was ambulatory, was given injections of dexamethasone and hydromorphone and provided zofran. (Id. at 592-603).

On November 29, 2009, Plaintiff underwent a consultative examination by Thomas Bennett, PhD (hereinafter "Dr. Bennett"), at the request of the Agency. (Id. at 506- 510) Plaintiff reported that she was seeking disability on the basis of her psychological problems rather than her back problems. Plaintiff also reported that she was subjected to physical and sexual abuses while in the military, that she cries all the time, and that she does not function well as a result. (Id.)

Dr. Bennett observed that Plaintiff did not appear to have any difficulty walking through the building or the parking lot or getting into her vehicle, although she was parked in a handicapped parking space. Plaintiff's mood was noted as somewhat dramatically dysphoric, and her affect was blunted. She

15

had no difficulty with serial 7s or with calculations including multiplication and division. Plaintiff had no obvious difficulty with concentration and attention, and her immediate recall and recall of remote events was adequate. Dr. Bennett noted that Plaintiff showed signs of self-doubt and indecision, that she demonstrated feelings of worthlessness, helplessness, that she appeared suspicious and guarded, but not paranoid, and that she was preoccupied with ways in which she has been victimized.

Dr. Bennett diagnosed rule out depressive disorder, rule out malingering, personality disorder with borderline, histrionic, and passive-aggressive features, and a GAF score of 50. He opined that Plaintiff "could probably make significant improvement in virtually every area of life if she were motivated to do so and with appropriate intervention." He further opined that Plaintiff "gives a subjective impression of someone whose primary goal is to get disability benefits." He opined that Plaintiff's ability to relate to others is moderately impaired, her ability to understand and carry out instructions would be average if she were motivated to do so, her ability to respond appropriately to supervisors and coworkers is moderately impaired but could be improved, and her ability to respond to work pressures is severely limited but could be improved with intervention.   (Id. at 506).  He opined that her financial judgment was adequate.

16

Shortly thereafter, Agency medical consultant Janise Hinson, PhD (hereinafter "Dr. Hinson"), conducted a review of Plaintiff's file, and prepared a Psychiatric Review Technique form dated December 23, 2009. (Id. at 528-41). She diagnosed Plaintiff with affective disorder and personality disorder, specifically with borderline histrionic features and rule out depressive disorder not otherwise specified. Dr. Hinson opined that Plaintiff is mildly limited in maintaining concentration, persistence, and pace and activities of daily living, is moderately limited in maintaining social functioning, and that she does not experience episodes of decompensation. (Id.)

Dr. Hinson also completed a Mental RFC on December 23, 2009. She opined that Plaintiff is moderately limited in the ability to interact appropriately with the general public, to accept instructions and respond appropriately to criticism from supervisors, to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, to maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness, and to respond appropriately to changes in the work setting. Dr. Hinson opined that Plaintiff had no limitations in the remaining 15 categories. (Id. at 542-5).

The record also includes a Physical Capacities Evaluation completed by Dr. Carter Smith, a chiropractor, on May 17, 2010.

17

In the evaluation, Dr. Smith opined that Plaintiff can sit, stand, or walk for no more than 2 hours at one time or no more than 3 hours total during an 8 hour workday. He further opined that Plaintiff can continuously lift/carry 0 to 10 pounds, frequently 11-20 pounds, occasionally 21-25 pounds, and never lift/carry more than 26 pounds. Dr. Carter opined that Plaintiff can use her hands bilaterally for grasping, pushing and pulling, and fine manipulations but can not use either foot for repetitive movements as in pushing/pulling leg controls. He also opined that Plaintiff can never bend or climb, she can occasionally squat and crawl, and she can frequently reach. He noted that Plaintiff is totally restricted from unprotected heights and mildly restricted from exposure to marked changes in temperature and exposure to dust, fumes, and gases. Dr. Carter opined that Plaintiff's pain is frequently present and found to be intractable and virtually incapacitating and that medication side effects can be expected to be severe and limiting to Plaintiff's effectiveness due to distraction, inattention, and drowsiness. (Id. at 546-47)[6].

---

[6] After the ALJ issued her decision, Plaintiff submitted additional evidence to the Appeals Council. Included in the evidence submitted to the Appeals Council is a treatment summary dated January 21, 2010 from Dr. Carter Smith. (Id. at 88-93). In the summary, Dr. Smith states that Plaintiff was injured in an automobile accident in September 2009 which resulted in sprain/strain injuries of her cervical spine, mid back and (Continued)

1.   **Whether the ALJ erred by finding that Plaintiff's depression is not a severe impairment?**

Plaintiff argues that the ALJ erred by finding that Plaintiff's depression is not a severe impairment. Specifically, Plaintiff submits that a plaintiff's burden of proving that an impairment is severe is minimal and that she has met this burden, as evidenced by treatment records from the VA which reflect that she received treatment for depression from at least August 2008 until February 2010. Plaintiff further points to the fact that her primary care provider, Dr. Rhodes, diagnosed her with major depressive episode and assigned a GAF score of 50. According to Plaintiff, a GAF score of 50 describes "serious" symptoms which would render her "unable to keep a job" and that the testimony of the VE bolsters this claim. In other words,

---

lumbar spine.   Plaintiff began treatment with Dr. Carter's office in October 2009, and was diagnosed with lumbar sprain/strain, thoracic sprain/strain, cervical sprain/strain, and myospasms.   Her treatment has included cryotherapy, soft tissue massage, trigger point, traction, and electro muscle stimulation.   According to Dr. Smith, on final examination, Plaintiff reported that her pain had improved, although she continued to be aggravated by sitting, standing, and bending. Dr. Carter opined that Plaintiff's prognosis for relief of neck pain, mid back, and low back pain was poor, that treatment yielded slower recovery results than expected, and that Plaintiff's "disability" may increase with age, and that she will require periodic treatment as relapses, exacerbations, and degenerations occur. (Id. at 88-93).

Plaintiff asserts that a GAF score of 50 is enough to find that her depression is "severe."  Defendant responds that the ALJ did not err.

Based upon a careful review of the record, the undersigned finds that notwithstanding the fact that the ALJ did not include Plaintiff's depression as a severe impairment, the record demonstrates that the ALJ carefully considered all the relevant evidence, including that relating to depression, through all five steps of the sequential inquiry; thus, the error at step two is harmless and not cause for reversal. Delia v. Comm'r of Soc. Sec., 433 Fed. Appx. 885 (11th Cir. 2011)(although substantial evidence does not support the ALJ's finding at step two, that claimant's mental impairments were not severe, error was harmless because the ALJ deemed other impairments severe and therefore continued the sequential inquiry, and considered consequences of mental impairments at steps three, four and five of the inquiry)(citing Reeves v. Heckler, 734 F. 2d 519, 524 (11th Cir. 1984)(rejecting a challenge to an ALJ's conclusion as harmless error when the ALJ had considered the relevant evidence in making the disability determination.))

As noted supra, at step two of the five-step evaluation process prescribed by the regulations, the ALJ is called upon to determine whether a claimant's impairments are severe. 20 C.F.R. §§ 404.1520, 416.920. The burden at this step is on the

claimant. Chester v. Bowen, 792 F. 2d 129, 131 (11th Cir. 1986).
A "[c]laimant need show only that her impairment is not so
slight and its effect not so minimal." McDaniel v. Bowen, 800
F.2d 1026, 1031 (11th Cir. 1986). This inquiry is a "threshold"
inquiry. It allows only claims based on the slightest
abnormality to be rejected. Brady v. Heckler, 724 F.2d 914, 920
(11th Cir. 1984).

Here, consistent with the regulations and applicable law,
at step two, the ALJ found that Plaintiff has the severe
impairments of lumbago, cervicalgia and personality disorder.
Because the ALJ found severe impairments, she did not end her
analysis at step two, but proceeded forward with the sequential
evaluation, and considered the effects of all of Plaintiff's
impairments, including those from her mental impairment. Indeed,
the ALJ discussed Plaintiff's treatment for depression and
personality disorder, and expressly found, based on the
evidence, that Plaintiff has mild restrictions in daily living,
concentration, persistence and pace, and moderate restrictions
in her social functioning. Further, in establishing Plaintiff's
RFC, the ALJ took in account functional limitations arising from
Plaintiff's mental impairments, and found that Plaintiff can
occasionally interact with co-workers, supervisors and the
public, and that she is limited to the performance of simple,
routine and repetitive tasks. Thus, the ALJ's error in not

including depression as a severe impairment at step two was not
fatal because the ALJ  considered all of the evidence relating
to Plaintiff's mental impairment at every step of the analysis,
and her conclusions regarding functional limitations arising
from Plaintiff's mental impairment are supported by substantial
evidence.

> **2.** **Whether the ALJ erred by improperly relying
> on the opinions of a non-examining state
> Agency psychologist regarding the impact
> of Plaintiff's mental impairment over the
> opinions of Plaintiff's treating
> physicians?**

In her brief, Plaintiff argues that the ALJ erred by
assigning significant weight to the opinions of non-examining
State Agency psychologist Dr. Hinson regarding the impact of
Plaintiff's mental impairment over the opinions of Plaintiff's
treating physicians. The Commissioner responds that Dr. Hinson
is an acceptable medical source; thus, the ALJ could properly
consider Dr. Hinson's opinions. The Commissioner further argues
that Dr. Hinson's opinions regarding the impact of Plaintiff's
mental impairments are consistent with the opinions of
psychologist Dr. Bennett who evaluated Plaintiff and whose
opinions the ALJ discussed in her decision.

Social Security Ruling 96-2p, 1996 SSR LEXIS 9, sets forth
certain rules for determining what weight to give the opinions
of treating physicians and directs an ALJ to explain the weight

given to the treating physicians' opinions. Consistent therewith, Eleventh Circuit case law provides that "[t]he ALJ must generally give the opinion of a treating physician 'substantial or considerable weight' absent a showing of good cause not to do so." Newton v. Astrue, 297 Fed. Appx. 880, 883 (11th Cir. 2008). See also Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997) (a treating physician's opinion must be given substantial weight unless good cause is shown to the contrary). The Eleventh Circuit has concluded "good cause" exists when a treating physician's opinion is not bolstered by the evidence, is contrary to the evidence, or when the treating physician's opinion is inconsistent with his or her own medical records. Phillips v. Barnhart, 357 F.3d 1232, 1240-41 (11th Cir. 2004).

If an ALJ elects to disregard the medical opinion of a treating physician, then he or she must clearly articulate the reasons for so doing. Id. The ALJ may also devalue the opinion of a treating physician where the opinion is contradicted by objective medical evidence. Ellison v. Barnhart, 355 F.3d 1272, 1275-76 (11th Cir. 2003) (per curiam) (citing Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. 1981) (holding that "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion") (citation omitted)); Kennedy v. Astrue, 2010 U.S. Dist. LEXIS 39492, *22-23 (S.D.

Ala. Apr. 21, 2010) ("[I]t is the ALJ's duty, as finder of fact, to choose between conflicting evidence[,] and he may reject the opinion  of any physician when the evidence supports a finding to the contrary.").

Based upon a careful review of the record, the undersigned finds that substantial evidence supports the ALJ's decision regarding Plaintiff's mental impairments, and that she did not err in according significant weight to the opinions of Dr. Hinson.  As an initial matter, the undersigned notes that Plaintiff does not identify the opinions of which particular treating physician she contends should have been accorded greater weight.  Plaintiff refers to her treating physicians at the VA, but points to no physician's assessment which attributed any functional limitation resulting from her physical or mental impairments, or which opined that Plaintiff's mental impairment resulted in marked limitations in her ability to function.

Further, as noted supra, Dr. Hinson completed the Mental RFC after reviewing Plaintiff's medical records.  Dr. Hinson concluded that Plaintiff is mildly limited in maintaining concentration, persistence and pace, and is moderately limited in the ability to interact appropriately with the general public, to accept instructions, and respond appropriately to criticism fro supervisors, to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, to

maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness, and to respond appropriately to changes in the work setting. (Id. at 542-5).

Dr. Hinson's Mental RFC was prepared shortly after Plaintiff underwent a consultative mental evaluation by Dr. Bennett, who diagnosed Plaintiff with depressive disorder, rule out malingering, personality disorder with borderline, histrionic, and passive-aggressive features. While Dr. Bennett assigned Plaintiff a GAF of 50, he found that her social judgment and judgment for how to behave in the work situation, and respond to co-workers and supervisors is moderately impaired. Additionally, he opined that while Plaintiff's ability to respond to work pressures is severely limited, he felt that she "could probably make significant improvement in virtually every area of her life if she were motivated to do so and with appropriate intervention." He also noted that Plaintiff "gives a subjective impression of someone whose primary goal is to get disability benefits." (Id. at 506). Additionally, treatment notes from the VA reflect that while Plaintiff complained of depression, sleeplessness and isolation from family and friends, she also reported that she walks almost two miles most morning, that she was dating an older guy in her walking group, and that she was involved in her church choir. Indeed, in November 2008, attending physician Dr. Seith

recommended that Plaintiff seek employment as the "best therapy" for inactivity. (Id. at 464-5).

In this case, it is clear from the ALJ's thorough opinion that she considered all of the evidence of record, including that of Plaintiff's physicians at the VA Clinic, Dr. Bennett and Dr. Hinson, in establishing Plaintiff's RFC. Plaintiff does not point to any mental limitation resulting identified by any of her treating physicians that is at odds with Dr. Hinson's opinions or that does not comport with the ALJ's RFC determination. Accordingly, the undersigned finds that the ALJ properly assigned evidentiary weight to the findings and opinions of medical consultants Dr. Bennett and Dr. Hinson, considered Plaintiff's medical condition as a whole, including her mental impairment and the other evidence of record, and that substantial record evidence supports the ALJ's finding that Plaintiff is not disabled.

### V.    Conclusion

For the reasons set forth, and upon careful consideration of the administrative record and memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner of Social Security, denying Plaintiff's claim for disability insurance benefits and supplemental security income, be **AFFIRMED**.

**DONE** this **21st** day of **August 2012**.

_____/s/ SONJA F. BIVINS_____
**UNITED STATES MAGISTRATE JUDGE**